# UNITED STATES DISTRICT COURT

for the

SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

**EARL TAKEFMAN**, an individual, derivatively representing Status-One Investments Inc.

                              **Plaintiff,**

*v.*

**NATIONAL HOUSECHECK CORPORATION** and

**NATIONAL HOUSECHECK FLORIDA, INC.**

                              **Defendants**

**and**

**DENNIS CONFORTO** and **SHERYL KINLAW** and

**SHARON O'LEARY** and **CHRIS APFEL** and

**LEON REINHART** and **STEFAN SWANEPOEL** and

**MARK MILLER** and **JOHN CASE** and

**WESLEY HARRIS** and **RUSSELL LEWIS**, derivatively,

as representatives of National Housecheck Corporation.

                              **Defendants,**

_____/

Case No:



FILED BY _____ D.C.

JAN 0 5 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff, Earl Takefman ('Plaintiff' or 'Earl'), self-represented and acting derivatively on behalf of Status-One Investments Inc. ('S1'), files this Verified Complaint against Defendants, (a) National HouseCheck Corporation ('NHC') and National HouseCheck Florida, Inc.('HCFL') (collectively referred to as 'Housecheck' or the 'Company'), and (b) acting derivatively on behalf of Housecheck, against several former directors of Housecheck, namely Dennis Conforto (the founder and former CEO), Sharon O'Leary, Dr, Chris Apfel, Leon Reinhart, Stefan Swanepoel, Mark Miller, and John Case (collectively the 'Former Board'), and (c) acting derivatively on behalf of Housecheck, against the present-day and recent officers and decision makers, namely Wesley Harris and Russell Lewis (collectively the 'Decision Makers'), and (d) acting derivatively on behalf of Housecheck, against Sheryl Kinlaw, the 'General Counsel' of Housecheck, and alleges as follows:

## PARTIES AND JURISDICTION

1. **Earl** – is an individual, who is a citizen of Quebec, Canada, and a lawful permanent resident of the United States since 2015, residing at 851 NE 1st Avenue, Miami, FL 33132. Earl is a shareholder of **Status-One Investments Inc.('S1'),** a company incorporated pursuant to the laws of the State of Delaware, with its head office also at 851 NE 1st Avenue, Miami, FL 33132, which company provides the consulting services of Earl to various third-party companies and individuals, as an independent contractor. Earl and S1 entered into a Consulting Agreement (the 'Agreement') on September 1, 2019, with Housecheck. Earl and S1 are collectively referred to herein as the 'Plaintiff'.

2. **NHC** – is a home inspection company located at 950 W. Bannock St., Boise ID 83702. Their website is www.housecheck.com. NHC is believed to be a Delaware corporation. All business dealings with Plaintiff were conducted by NHC, not HCFL, including sales generated, consulting payments made, credit cards, business cards, trade shows, healthcare payments, and Plaintiff only acted on behalf of NHC, not HCFL who was simply the non-active signatory to the Agreement.

3. **HCFL** – or its assignee, is a Florida corporation with its principal office at 950 W. Bannock St., Boise ID 83702, that contracted with S1 and Earl pursuant to the terms of the Agreement. There were never any transactions of any kind made by, or with, HCFL, other than

2

the signing of the Agreement. Plaintiff has no knowledge of the relationship between NHC and HCFL, however, it is believed that HCFL is a totally owned subsidiary of NHC.

The reference to **'Housecheck'** or the **'Company'** refers collectively to both NHC and HCFL.

4. **The Former Board and General Counsel** – are certain board members and officers of the Company that managed and oversaw the dealings of Housecheck during the term of the Agreement. Given the insolvency of Housecheck, Plaintiff has a derivative right, on behalf of Housecheck, to seek damages from the Former Board and General Counsel as a result of their breach of their fiduciary duties to shareholders and creditors, in creating and overseeing a deceptive, fraudulent and potentially criminal enterprise which included incidents of securities fraud, fraud, misappropriation of funds, embezzlement, preferred payments, income tax evasion and aiding and abetting breach of their fiduciary duties of loyalty, fair dealing and good faith.

5. **The Decision Makers** – have been effectively been operating Housecheck since April 2020, and to the best of Plaintiff's knowledge, have been involved in self-dealing and making preferential payments to various parties to the exclusion of other creditors, and not paying former employees and executives based upon totally false misrepresentations, which they know to be false and fraudulent.

6. This Court has jurisdiction over this action pursuant to U.S.C. 1332(a) as the parties are citizens of different states, and the value of the matter exceeds $75,000. As such this Court may properly exercise jurisdiction because both requirements of U.S.C 1332(a) have clearly been met.

7. Plaintiff does not have the individual addresses of the various directors and officers of the Company, and as such has served the Company as agent for its officers, directors, and former directors, as well as sent e-mails with this Complaint to each Defendant at e-mail addresses known to Plaintiff.

### AS PLAINTIFF, EARL IS ACTING DERIVATIVELY ON BEHALF OF S1

Pursuant to the Federal Rules of Civil Procedure, Rule 23.1, Earl has met all the pleading requirements listed in section (b) as follows:
  a) This Complaint is verified by the Plaintiff herein, and
  b) The Plaintiff is, and was always, a shareholder of S1, during the entire time in question, and
  c) The Plaintiff is fairly and adequately representing all the other shareholders of S1, all of whom are his family members and do not oppose this action, and

3

d) The Plaintiff confirms and alleges that the action is not a collusive one to confer jurisdiction that this Court would otherwise lack, and

e) The Plaintiff demanded that the S1 Board of Directors institute an action to recover the funds owing by Housecheck, which was rejected by S1's board, due to the perceived cost of the litigation relative to the funds to be recovered.

## BACKGROUND

8. In August 2019, Bill Klehm, Housecheck's then President and Chief Operating Officer ('Bill'), first met Earl and enticed him to consider joining his team at Housecheck to help build a national inspection company and help him raise money to properly capitalize Housecheck.

9. Bill told Earl that a capital raise was eminent and that he could only afford to pay the agreed upon compensation once Housecheck had raised a $3 million equity investment, known as a 'Series A financing'. Earl agreed to accept an accrued salary until a capital raise was finalized for $3 million of the total of $10 million that Housecheck was seeking to raise.

10. On September 1, 2019, the Agreement was signed between S1, Earl and HCFL, with Bill signing on behalf of HCFL. Earl was immediately added to the NHC website as a Managing Director and began setting up meetings to 'pitch' the NHC story to various wealthy family offices of billionaires.

11. During the last 4 months of 2019, it began to become evident that the Series A capital raise was much more challenging than Bill had anticipated, and that a convertible debt offering was the only logical alternative to an equity Series A. By the end of 2019, Earl was already owed over $60,000 having worked without compensation for 4 months and was discussing payment almost every single day with Bill via telephone, text, and e-mail.

12. Because Bill could not afford to lose Earl's services on behalf of Housecheck, finally, in mid-January 2020, Bill authorized NHC to partially pay Earl $20,000 against the money that was owing to him, thereby overriding the Agreement which referred to payment only when a $3 million Series A was completed.

13. Thereafter, Bill assured Earl, <u>almost daily in writing</u>, that he would pay the then outstanding amounts owing to him.

14. In March, the Covid-19 disaster became a reality and Housecheck was unable to raise any capital of any kind.

4

15. When Housecheck applied and received a Paycheck Protection Program loan from the Small Business Administration, believed to be approximately $1,000,000, Earl was led to believe that he would receive at least a portion of his back-compensation from the loan, only to be once again disappointed by not receiving anything, as was determined by one of the Decision Makers.

16. At that time, Bill was elevated to the position of Chief Executive Officer, and the former CEO and founder, Dennis Conforto, was terminated, while transferring his shares to one or more of the investors who took over responsibility for all Housecheck finances.

17. Plaintiff believes that the vast majority of Dennis Conforto's 70% equity in the Company was transferred to the Decision Makers.

18. In view of the Covid problem and its effect on the business, Earl and S1 were terminated on May 9th, 2020. As at May 9, 2020, $118,000 was still owing pursuant to the Agreement.

19. Earl, in conjunction with Bill, decided not to immediately pursue his claim in court because Bill was working on multiple new financings which would have resulted in payment of Earl's back-compensation. Even after his termination, Earl and Bill still spoke multiple times per day, including weekends, as they strategized together to complete a deal and avoid litigation.

20. On October 1st, 2020, Plaintiff entered into a Settlement Agreement with Housecheck and began to receive payments for amounts owing to him thereunder. The Settlement Agreement was for $108,352.23.

21. On January 1st, 2021 Housecheck breached the Settlement Agreement by not paying Plaintiff an amount that was due thereunder.

On January 1st, 2021, there was still $43,481.80 owing pursuant the Settlement Agreement, and a larger amount owing given the terms of the Settlement Agreement had been breached by Housecheck.

## DELAWARE LAW ON ORAL MODIFICATIONS TO CONTRACTS

A recent decision from the Delaware Superior Court, *Estate of Mark Buller v. Montague*, recognizes that, under Delaware law, contract provisions deeming oral modifications unenforceable can be waived by a course of conduct.

Delaware law recognizes contracts that contain no-oral-modification clauses, such as the Agreement, can be modified orally because no-oral-modification clauses can be waived by course of conduct.

A party seeking to prove an oral modification to a contract that contains a no-oral-modification clause bears a heightened evidentiary burden and must prove the intended change to the written agreement with sufficient specificity and directness as to leave no doubt of the intention of the parties to modify orally what they previously agreed could only be modified in writing.

The modified clause in the Agreement is (emphasis added):

"The Monthly Fee shall accrue, but not be paid, until such time that National HouseCheck Corporation <u>receives at least three million dollars ($3,000,000) in funds from its Series A financing</u>. Upon receipt of such amount, Consultant will be paid all accrued funds and thereafter will be paid at least one time per month or more frequently at Company's option.

The following is the evidentiary proof that the clause referring to a $3,000,000 Series A financing was waived:

  a) On January 16, 2020, Bill authorized, and Housecheck paid to Plaintiff, $20,000 of the then $75,000 amount owing to S1/Earl. Bill, the President of the Company, and signatory of the Agreement, indicated that the balance was shortly forthcoming, in writing, and
  b) Bill regularly confirmed his agreement to waive and override the wording in the Agreement, <u>in real-time,</u> in numerous conversations, texts, and e-mails, such as these:

     **January 24, 2020 From Bill Klehm, COO**
     …I am busting my ass to get you paid. I manage cash everyday and will pay you as soon as we have some available cash

     **Friday, March 6, 2020 from Bill Klehm, COO**
     8:25 am from Earl: Just some $ so I can breathe and try and get back to normal
     8:29 am from Bill Klehm: My mission

     **Tuesday, March 17th, 2020**
     If I get money today, you get money. Million wire set to go after that call allegedly….will wire you then

     **Wednesday, March 19, 2020 from Bill Klehm, COO**
     From Earl: I get money tomorrow?

> From Bill: When the money hits our bank you get paid....period.
>
> **Friday, March 27, 2020 from Bill Klehm, COO**
>
> From Earl: Any money event on the horizon?
>
> From Bill: still expecting 250 today. Don't lose hope...working my ass off to deliver

c) Housecheck continued to pay Earl's healthcare throughout the contract, and
d) Housecheck confirmed in writing that the amount was owing to several potential investors who were considering purchasing Housecheck.
e) Housecheck agreed to settle the $118,000 owing to Plaintiff's for $108,352.23.

Based upon the above course of conduct and affidavit, Plaintiff has met the burden established by this Court with great specificity and directness to leave no doubt of the intention of the parties.

## THE INSOLVENCY OF HOUSECHECK, AND PLAINTIFF'S DERIVATIVE RIGHTS TO SUE THE DIRECTORS AND OFFICERS OF THE COMPANY ON BEHALF OF HOUSECHECK

Housecheck was insolvent for all of 2020, and Plaintiff believes that it remains insolvent today as they are not paying their creditors in a timely manner and instead are developing dilatory and frivolous reasons not to pay ex-employees and creditors, including Earl, Bill, and Dr. Billy Edwards.

**Delaware Law**

As a creditor of an insolvent company, S1 has standing under Delaware law to bring a derivative claim against directors and officers on behalf of the Company for breaches of their fiduciary duties to the Company including the duties of loyalty, care, good faith and fair dealing. Directors and officers of a Delaware corporation have a general duty to maximize the economic value of the firm. See *Prod. Res. V. NCT Group, Inc.* 863 A.2d 772,776-777,790-791 (Del. Ch. 2005). When the firm is insolvent, the directors are to pursue the end for its residual stakeholders, the creditors. *Id.* Creditors of an insolvent corporation therefore have standing to bring derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. *Am. Catholic Edu. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-102 (Del.2007).

Housecheck's directors and officers owe the Company fiduciary duties of care and loyalty. They are not entitled to the deference and protection of the business judgment rule where they may have breached the duty of loyalty. See *Joseph v. Frank (In re Troll Commc'ns, LLC)* 385, B.R.

110, 119 (Bankr. D. Del. 2008). Under Delaware law, the 'duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally'. *Id* (citations omitted).

For greater clarity, Earl is acting derivatively on behalf of S1, to sue the Former Board, the General Counsel, and the Decision Makers, derivatively on behalf of the Company.

## WRONGDOING BY THE FORMER BOARD, GENERAL COUNSEL & DECISION MAKERS

The Former Board, General Counsel and Decision Makers have breached their fiduciary duties to the Company in serious, disturbing and in some cases in a potentially criminal manner, and allowed a corporate culture to flourish and exist, while the Company sustained losses of more than $10 million, thereby losing all the money invested by good faith investors. As the Company is, and was, insolvent, these breaches have harmed the Company's residual stakeholders, its creditors.

These allegations of wrongdoing are violations of the General Counsel, Decision Makers and Former Board's fiduciary duties of loyalty, care, good faith and fair dealing, and also demonstrate an alarming 'corporate culture', under the watchful-eye of the former CEO and founder, and General Counsel, which included circumstances of bad faith, self-dealing, securities fraud, corporate fraud, misappropriation of funds, embezzlement, conspiracy, preferential payments, income tax fraud, and aiding and abetting a breach of fiduciary duties, all of which will be proven at trial.

These allegations of wrongdoing included incidents whereby relatives of officers were paid while not working for the Company. Incidents whereby totally fraudulent information was given to potential investors to entice them to invest, under the watchful eye of both the General Counsel and former CEO. Incidents where embezzlement by relatives of a senior officer and investor were covered up. Incidents of blatant income tax evasion and declaring personal expenses to be Company expenses. Incidents of preferential and self-serving payments to certain creditors to the exclusion of others. And incidents where ex-employees and executives were not paid after alleging frivolous and dilatory legal defenses, which will clearly be the subject of Rule 11 sanctions, if pled in separate litigation.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

22. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '22' as if fully set forth herein.

23. As more fully described above, Plaintiff has provided the consulting services in the Agreement, and Housecheck have refused to pay him what is owing.

24. Earl and S1 had spent hundreds of hours, without full compensation, fulfilling the terms of the Agreement with praise from his direct reports for the work done.

25. Housecheck has breached the Agreement with S1, and the Settlement Agreement, and in so doing, and as a direct and proximate result of Defendants' actions, Plaintiff has sustained damages.

26. Plaintiff also asks this Court to award punitive damages upon a proper showing pursuant to the statutes.

**WHEREFORE**, Plaintiff Earl, on behalf of S1, demands judgment in his favor against all Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

27. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '22' as if fully set forth herein.

28. Housecheck advised Earl that he would be paid shortly on numerous occasions to not lose the value of his services.

29. Housecheck knew these statements were false when making them to Earl to entice him to continue to act on Housecheck's behalf.

30. Housecheck intended for Earl to rely upon their misrepresentations.

31. Earl relied on the representations by Housecheck'.

32. S1 suffered damages because of Housecheck's misrepresentations.

33. Earl and S1 had spent hundreds of hours, without full compensation, fulfilling the terms of the Agreement with praise from his direct reports for the work done.

34. Plaintiff also asks this Court to award punitive damages upon a proper showing pursuant to the statutes.

**WHEREFORE**, Plaintiff Earl, on behalf of S1, demands judgment in his favor against all the Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraud in the Inducement)

35. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '22' as if fully set forth herein.
36. Housecheck regularly misinformed and lied to Earl about payment of the money owing to him to continue to avail themselves to his efforts, services, and results.
37. Housecheck knew that they did not have the funds to pay S1 as they were insolvent.
38. Earl and S1 relied upon the promises by Housecheck that S1 would be paid which resulted in damages to Plaintiff.
39. Plaintiff also asks this Court to award punitive damages upon a proper showing pursuant to the statutes.

**WHEREFORE**, Plaintiff Earl, on behalf of S1, demands judgment in his favor against all the Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

40. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '22' as if fully set forth herein.
41. The parties to this litigation had a valid contract between them for which Housecheck partially paid S1.
42. The agreement between the parties had an implied covenant of good faith and fair dealing.
43. Earl was often praised for his work, work ethic and results by Housecheck.
44. Housecheck violated the implied covenants by not paying S1 for the services rendered.

45. As a result, S1 suffered damages by not being paid.

46. Plaintiff also asks this Court to award punitive damages upon a proper showing pursuant to the statutes.

**WHEREFORE**, Plaintiff Earl, on behalf of S1, demands judgment in his favor against all the Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

47. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '22' as if fully set forth herein.

48. Housecheck benefitted, at Plaintiffs' expense, namely through Earl's services to Housecheck without receipt of the agreed upon compensation. Equity and good conscience require restitution.

**WHEREFORE**, Plaintiff Earl, on behalf of S1, demands judgment in his favor against all the Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## ATTORNEY'S FEES AND COSTS

Plaintiff seeks to recover the equivalent of reasonable attorneys' fees and costs against all Defendants for the time spent in attempting to recover the amounts owing to him as a pro se litigant, under all applicable statutes and contractual provisions.

## CONCLUSION AND PRAYER

Plaintiff requests that all the Defendants be cited to appear and answer, and that upon final trial of this cause, Plaintiff has judgment against Defendants. in the form of the following relief, which cumulatively totals more than $75,000:

(i) damages to which Plaintiff shows itself justly entitled within the jurisdictional limits of this Court, including the value of options to purchase Restricted Stock Units, and

(ii) costs of court, and

(iii) the equivalent of reasonable and necessary attorney fees, and

11

(iv) pre-judgment and post-judgment interest, and

(v) punitive damages that the Court may award given Defendants' egregious behavior, and

(vi) any other relief to which Plaintiff is justly entitled.

**Respectfully submitted on January 5, 2021**

**EARL TAKEFMAN**

Pro Se
Telephone: (786) 757-0780
Facsimile: (786)-713- 1875
etakefman@hotmail.com

By: _____
Earl Takefman

## VERIFICATION OF COMPLAINT BY PLAINTIFF

1. I have reviewed the Complaint; and
2. I have a personal knowledge of the facts therein; and
3. Under penalties of perjury, I declare that the foregoing, and the facts alleged, to the best of my knowledge, are true.

**EARL TAKEFMAN**

Pro Se
Telephone: (786) 757-0780
Facsimile: (786)-713- 1875
etakefman@hotmail.com

By: _____
Earl Takefman

**STATE OF FLORIDA**
**COUNTY OF MIAMI-DADE**

The foregoing pleading was acknowledged before me on this __4__ day of January 2021, Earl Takefman, acting derivatively on behalf of Status-One Investments Inc., who is personally known to me and has produced his Florida's Driver's License as identification.

_____
**Notary Public, State of Florida**

Notary Public State of Florida
Alfredo Montesinos
My Commission GG 356606
Expires 07/16/2023

**My Commission expires:**

7-16-2023